**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VICTOR M. ORNDORFF, on behalf of himself and all others similarly situated,<br><br>        **Plaintiff,**<br><br>  **v.**<br><br>FORD MOTOR COMPANY,<br><br>        **Defendant.** | Case No.  20 cv 247<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial**<br><br>**FILED**<br>JAN 14 2020<br>KATE BARKMAN, Clerk<br>By_____Dep. Clerk |

### CLASS ACTION COMPLAINT

Plaintiff Victor M. Orndorff ("Plaintiff"), by and through counsel, brings this Class Action Complaint against Defendant Ford Motor Company ("Defendant" or "Ford"), on behalf of himself and all others similarly situated, and allege, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

### NATURE OF THE CASE

1.  Plaintiff brings this case individually and on behalf of all other similarly situated persons ("Class Members") who purchased or leased Model Year 2017–2020 Ford F-150 vehicles ("Class Vehicles" or "Vehicles") that were designed, manufactured, distributed, marketed, sold, and leased by Defendant or Defendant's parent, subsidiary, or affiliates thereof.

2.  Defendant designed, manufactured, distributed, marketed, sold, and leased Model Year 2017–2020 Ford F-150 Vehicles equipped with the 10R80, a 10-speed automatic transmission ("Transmission") designed and manufactured by Ford.

3.      Defendant knew or should have known that the Vehicles contain one or more design and/or manufacturing defects, including but not limited to defects contained in the Vehicles' 10R80, a 10-speed automatic transmission that can shift harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears.

4.      An automatic transmission is essentially an automatic gear shifter. Instead of manually shifting the gears with a clutch, the automatic transmission does it on its own. The transmission acts as a powertrain to convert the vehicle engine's force into a controlled source of power. Accordingly, drivers need a properly functioning automatic transmission in order to safely and reliably accelerate and decelerate their Vehicles.

5.      A common design and/or manufacturing defect in Ford's 10R80 transmissions is a potentially life-threatening safety issue and Ford has refused to recall or replace the defective Transmissions.

6.      Ford's warranty states that, "dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship."[1]

7.      Upon information and belief, Ford refuses to replace or repair the Transmissions and merely states that the abrupt and harsh shifting is normal.

8.      Prior to purchasing or leasing the Class Vehicles, Plaintiff and other Class Members did not know that the Class Vehicles would abruptly and harshly shift due to the Transmission Defect and cause their vehicle to unexpectedly surge, hesitate, and jerk.

---

[1]Source:    http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-Car-Lt-Truck-version-5_frdwa_EN-US_01_2018_3.pdf (last viewed January 2, 2020).

9.     Upon information and belief, Plaintiff alleges that Defendant knew or should have known that the Class Vehicles are defective and suffer from the Transmission Defect and are not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, Defendant failed to disclose this defect to Plaintiff and Class Members at the time of purchase or lease and thereafter.

10.     Had Plaintiff and Class Members known about the Transmission Defect at the time of sale or lease, as well as the associated costs related to the Transmission Defect, Plaintiff and the Class Members would not have purchased the Class Vehicles or would have paid less for them.

11.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

12.     The first priority of an auto manufacturer should be to ensure that its vehicles are safe and operate as intended to prevent or minimize the threat of death or serious bodily harm. In addition, an auto manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely, and its mechanical systems (such as the transmission) work properly. Moreover, an auto manufacturer that is aware of dangerous design defects that cause its vehicles to jerk, hesitate, surge, or slip gears must promptly disclose and remedy such defects.

13.     This case arises from Defendant's breach of its obligations and duties, including Defendant's omissions and failure to disclose that, as a result of the Transmission Defect, Class Vehicles may shift harshly, slip gears, hesitate, or surge, creating an unreasonable risk of serious bodily harm and death.

14. To the extent warranted by the developing facts, Plaintiff will further supplement the list of Class Vehicles to include additional Ford vehicles that have the Transmission Defect.

15. The Transmission Defect makes the Class Vehicles unreasonably dangerous. Because of the Defect, the Class Vehicles are likely to suffer serious damages and potentially catch fire if accidents occur, and there is an unreasonable and extreme risk of serious bodily harm or death to the vehicle's occupants and others in the vicinity.

**PARTIES**

16. Plaintiff Victor M. Orndorff is a Pennsylvania citizen who lives in New Freedom, located in York County, Pennsylvania. Mr. Orndorff purchased a 2018 Ford F-150 Super Cab with the 10R80 10-speed transmission from Chapman Ford located in Columbia, Pennsylvania, and has returned to the same Ford authorized dealership for service. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Ford Motor Company.

17. Defendant Ford Motor Company is a publicly traded corporation organized under the laws of the State of Delaware with The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its registered agent. Ford's principle place of business is at One American Road, Dearborn, Michigan 48126.

18. Ford, through its various entities, designs, manufactures, markets, distributes, and sells its vehicles in this District and many other locations in the United States and worldwide. Ford and/or its agents designed, manufactured, and installed the Ford transmissions in the Class Vehicles. Ford also developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials pertaining to Class Vehicles.

**JURISDICTION AND VENUE**

19.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and Plaintiff and Class Members are citizens of states different from Defendant.

20.     The Court has personal jurisdiction over Ford because, through its business of distributing, selling, and leasing the Class Vehicles in this District, Ford has established sufficient contacts in this District such that personal jurisdiction is appropriate.

21.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff Orndorff's Vehicle was purchased in this District, and he has taken the Vehicle for repairs in this District.

**THE NATURE OF THE TRANSMISSION DEFECT**

22.     For many years, Ford has designed, manufactured, advertised, sold, and leased its popular Ford F-Series pickup trucks, which has been the best-selling pickup in the United States for the last 42 years.[2]

23.     On its website, Ford touts the F-150's superiority among its competitors:

---

[2]Source: https://www.msn.com/en-us/autos/news/ford-f-series-is-americas-best-selling-truck-for-42nd-straight-year/ar-BBRLwMm (last viewed January 2, 2020).

# CLASS-LEADING CAPABILITY

The Ford F-150 makes tough tasks look easy, whether it's working on the job or heading out on a weekend of recreation. F-150 outperforms every other truck in its class when hauling cargo in the bed or towing a trailer.* No wonder the competition is always in a scramble to follow the leader.

24.     In terms of power, Ford states the F-150's 3.5L Ecoboost engine with the 10R80

10-speed transmission provides "on-demand power with virtually no lag"[3]:

# 3.5L ECOBOOST®

The 3.5L EcoBoost® with 10-speed transmission boasts impressive power ratings of 375 horsepower and best-in-class* 470 lb.-ft. of torque, beating out all gas and diesel competitors. This engine delivers the F-150 best-in-class* tow rating too. Features include the Ford port-fuel and direct-injection (PFDI) system with two injectors per cylinder — one in the air intake port, another inside the cylinder — to increase performance. Plus twin intercooled turbos for on-demand power with virtually no lag.

*When properly configured. Class is Full-Size Pickups under 8,500 lbs. GVWR based on Ford segmentation.

25.     Ford further highlights its 10-speed automatic transmission as shown below:

# 10-SPEED AUTOMATIC TRANSMISSION

F-150 EcoBoost®, V8 and diesel engines deliver their power through an advanced 10-speed automatic transmission. Compared with the 6-speed, the 10-speed delivers improved overall performance, with enhanced acceleration at the low and mid ranges of the power band. Features include optimized wide-span gear spacing coupled with drag-reduction actions plus three overdrive gears. What's more, you can choose from selectable modes: Normal, Tow-Haul, Snow-Wet, EcoSelect, and Sport.



---

[3] https://www.ford.com/trucks/f150/?hptid=fv-2598-hp-va%3Abillboard%3Aslide0%3Ana%3Aford%20f-150&gnav=header-all-vehicles (last viewed January 2, 2020).

26.     In terms of express warranties, Ford offers a "New Vehicle Limited Warranty" for three years or 36,000 miles, whichever occurs first.[4]

27.     Ford also offers extended warranty coverage for Powertrain components for five years or 60,000 miles, whichever occurs first.  This extended warranty coverage includes the transmission and all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case, and transmission mounts.

28.     Despite the popularity of Ford's F-150, the truck has not been without its problems.  In February 2019, Ford issued three recalls, one of which covered select 2011 and 2013 Ford F-150 vehicles with six-speed automatic transmissions.  In that recall, approximately 1.48 million F-150 trucks had a defect that can cause the truck unexpectedly to downshift into first gear causing accidents and injury to drivers.[5]

29.     Plaintiff and Class Members allege a common transmission defect in their 2017–2020 model year Ford F-150's with 10-speed transmissions. As discussed herein, numerous F-150 drivers have experienced a loud "clunking" noise when starting the engine. One driver stated that the transmission "clunk" was so loud that he thought he had been hit by another car. Other drivers complain that their transmissions slip gears, jerk, and/or shift roughly. In one NHTSA complaint, a vehicle lost all power while accelerating through an intersection and the transmission failed to shift up or down. In another complaint, an F-150 would repeatedly stay stuck in the same gear, making the truck inoperable for several hours at a time.

---

[4] Source: 2018 Model Year Ford Warranty Guide;
http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-Car-Lt-Truck-version-5_frdwa_EN-US_01_2018_3.pdf (last viewed January 2, 2020).
[5] Source:     https://www.cnbc.com/2019/02/13/ford-issues-3-recalls-covering-nearly-1point5-million-vehicles.html (last viewed January 2, 2020).

30.    Due to the Transmission Defect, drivers have reported whiplash due to harsh shifting. Finally, many drivers have stated in NHTSA complaints that they do not feel safe driving their F-150's in normal traffic conditions.

31.    In response to customer complaints, Ford issued at least two Technical Service Bulletins ("TSBs") addressing the Transmission Defect. While the TSBs were meant to address harsh or bumpy transmission shifting, Ford advised that issues were normal and did not offer to repair or replace the Transmissions.

32.    Due to Ford's unwillingness to acknowledge the Transmission Defect and refusal to repair the Class Vehicles, Plaintiff and Class Members continue to drive defective and unsafe vehicles.

## PLAINTIFF'S EXPERIENCE

33.    Mr. Orndorff was shopping for a safe and reliable vehicle to serve as his personal vehicle and to commute to and from work.  As a result of his research, in September 2018, he purchased a brand new 2018 Ford F-150 Super Cab with 10-speed transmission pick-up truck from Chapman Ford in Columbia, Pennsylvania (an authorized Ford dealership). Mr. Orndorff's vehicle was equipped with the defective 10-speed transmission.   The purchase price of Mr. Orndorff's Vehicle was $36,487.

34.    At the time of Mr. Orndorff's purchase, Ford knew that its F-150 10R80, 10-speed automatic transmissions were defective but did not disclose the Defect to Mr. Orndorff.  Mr. Orndorff purchased, then operated the vehicle, on the reasonable but incorrect belief that his Vehicle's transmission would operate properly as warranted.

35.    At the time of purchase, the odometer on Mr. Orndorff's Vehicle showed 10 miles. By the time he had driven the Vehicle 6,000 miles, Mr. Orndorff started to notice a loud

"clanking" noise from his transmission. While driving the Vehicle, Mr. Orndorff also noticed the Vehicle would shift gears in a "rough" manner with unusually long shift times causing the vehicle to decelerate in an unsafe manner while driving.

36.     On or about the Fall of 2018, Mr. Orndorff took his Vehicle to the repair shop at Chapman Ford, an authorized dealership and repair facility, in Columbia, PA. Mr. Orndorff informed employees at Chapman Ford about the issues he was experiencing with his Vehicle's transmission and requested that they fix the problem per his Vehicle's 3 year/36,000 mile warranty and 5 year/60,000 Powertrain Warranty. Mr. Orndorff was advised by employees at the repair shop that there was no fix for the transmission issues he was experiencing and that all Ford F-150 pickup trucks with 10 speed transmissions exhibited the same loud "clank" or "bang" noise and slipping and jerking while starting the engine, accelerating or shifting gears.

37.     On or about the Spring of 2019, after continuing to experience the same issues with his Vehicle's transmission, Mr. Orndorff contacted the Ford corporate office and informed Ford of the issues he was experiencing with his Vehicle's transmission and requested that Ford fix the problem per his Vehicle's warranty. Mr. Orndorff was told to take his Vehicle to Gene Latta Ford in Hanover, Pennsylvania; Mr. Orndorff was advised by Ford that this was a "Premier Dealership." Again Mr. Orndorff was told by employees at the repair shop that there was no fix for the transmission issues he was experiencing and that all Ford F-150 pickup trucks with 10 speed transmissions exhibited the same loud "clank" or "bang" noise and slipping and jerking while starting the engine, accelerating or shifting gears.

38.     On or about the September 5, 2019, after continuing to experience the same issues with his Vehicle's transmission, Mr. Orndorff took his Vehicle to the repair shop at Crouse Ford, an authorized dealer and repair shop, in Taneytown, MD.  Again, Mr. Orndorff informed the

repair shop of the issues he was experiencing with his Vehicle's transmission and requested that they fix the problem per his Vehicle's warranty. Again Mr. Orndorff was advised by employees at the repair shop that there was no fix for the transmission issues he was experiencing and that all Ford F-150 pickup trucks with 10 speed transmissions exhibited the same loud "clank" or "bang" noise and slipping and jerking while starting the engine, accelerating or shifting gears.

39.     Neither Ford nor any of its agents, dealers, or representatives informed Mr. Orndorff of the Transmission Defect prior to his purchase of the Vehicle.

40.     Had Mr. Orndorff been advised of the Transmission Defect at or before the point of purchase, he would not have purchased his Vehicle or else would have paid significantly less for the Vehicle. Mr. Orndorff did not receive the benefit of his bargain. As a result, Mr. Orndorff has paid and continues to pay a premium for a defective vehicle which poses a safety hazard to himself, his family, and others.

41.     If Mr. Orndorff's F-150 transmission did not contain the Defect, he would likely lease or purchase another Ford F-150 in the future. Alternatively, if the Court were to issue an injunction ordering Defendant to comply with advertising and warranty laws and fully address the safety issue, Mr. O'Connor would likely lease or purchase an F-150 again in the future.

## DEFENDANT KNEW OR SHOULD HAVE KNOWN OF THE TRANSMISSION DEFECT PRIOR TO PLAINTIFF'S PURCHASE

### A.     Ford's Knowledge and Refusal to Remedy the Transmission Defect

42.     Since the 10R80 transmission was introduced and equipped in the Class Vehicles, drivers have repeatedly complained about difficulty shifting and vehicle lunging and/or jerking to Ford.  During the class period there was an unusually large number of complaints of harsh and belabored transmission shifting such that Ford was put on notice of a specific problem.

43.     Namely, as the consumer complaints below indicate, Ford was aware, or should have been aware, that the Transmission Defect was present in the Class Vehicles dating back to at least March 2018, the date of the first TSB.

44.     Thus, by 2018, Ford knew or should have known through sufficient product testing, consumer complaints, or other methods, that the Class Vehicles contained the Transmission Defect.

45.     Upon information and belief, the Class Vehicles contain one or more defects in materials, components, construction or design, including but not limited to, the Transmission Defect, as described herein.

46.     Upon information and belief, faced with the fact that Class Vehicles were not properly shifting due to the Transmission Defect, Ford issued multiple Technical Service Bulletins ("TSBs") addressing the shifting problems.

47.     The TSBs stated 2017 and 2018 F-150 vehicles "may exhibit harsh/bumpy upshift, downshift and/or engagement concerns."[6] The TSBs suggested reprogramming the powertrain control module ("PCM"). The TSB's further stated that the Class Vehicles were "equipped with an adaptive transmission shift strategy which allows the vehicle's computer to learn the transmission's unique parameters and improve shift quality. When the adaptive strategy is reset, the computer will begin a re-learning process. This re-learning process may result in firmer than normal upshifts and downshifts for several days."[7]

---

[6] Source: https://static.nhtsa.gov/odi/tsbs/2018/MC-10149749-9999.pdf (last viewed January 2, 2020).
[7] Source: https://static.nhtsa.gov/odi/tsbs/2018/MC-10149749-9999.pdf (last viewed January 2, 2020).

48.     Upon information and believe, Ford's "adaptive transmission shift strategy" fails to remedy the shifting problems reported in Class Vehicles.

49.     Despite this knowledge, Ford took no further steps to remedy this issue, leaving Plaintiff and the other Class Members with knowingly defective Class Vehicles.

**B.     Customers Repeatedly Complained About Harsh and Erratic Shifting and Vehicle Lunging, Hesitation, and Jerking.**

50.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the Transmission Defect. Complaints filed by consumers with the NHTSA and posted on the Internet demonstrate that the Transmission Defect is widespread. Not only have consumers complained about harsh and bumpy shifting, but this often led to potentially life-threatening situations. In addition, these complaints about the Class Vehicles as alleged in this Complaint illuminate Ford's awareness of the Transmission Defect and its potential danger (note that spelling and grammar mistakes remain as found in the original):

<u>NHTSA Complaint dated May 20, 2019</u>:  original problem was transmission slamming into gear and slipping when accelerating. the truck was kept at agency for 21/2 weeks. service manager told me that ford instructed him to quit working on it. problem of slipping still exist and recently the vehicle jumped out of gear when i was merging onto the interstate. i do not feel safe driving this vehicle. (ID No. 11208720)

<u>NHTSA Complaint dated March 14, 2019</u>:  vehicle lost all power while accelerating thru an intersection. the orange wrench illuminated on the dash with "check manual". i noticed the transmission not shifting down and up smoothly. it tried to start the truck off in 5th gear from a stop. after being shut down for an hour, the issue went away. dealer scanned it this morning and said no code was stored. (ID No. 11079161)

<u>NHTSA Complaint dated April 12, 2019</u>: transmission will stick and not change gears. like a dead spot and truck would not go faster. this has happened several times. (ID No. 11195806)

<u>NHTSA Complaint dated April 8, 2019</u>:  traveling down my driveway, coming to a stop and the transmission gets stuck in 3rd gear. it won't down shift into 1st gear so it won't move forward. i put the shifter into reverse and i am able to back up. put shifter into drive and still stuck in 3rd gear. back up to my house and park the truck not able to go anywhere. go into the house wait a couple of hours and then try it again and everything is okay. this has happened to me 3 other times. (ID No. 11195452)

NHTSA Complaint dated November 18, 2017:  4500 miles on vehicle, never towed anything, only normal city/highway driving, no long trips ever taken. was turning left at intersection and transmission seemed to slip, truck still made it through, i then noticed that a yellow "wrench" light came on, i assumed this was for my upcoming 5k mile oil change. i didn't think much of the "slip" and assumed it was an anomaly. i then got onto the highway and noticed the truck was behaving strangely. power was inconsistent, i attempted to put it into cruise control and it refused to activate. i got off of highway and turned left at an intersection, starting from a complete stop the truck lurched forward and then slipped out of gear and stalled out in the intersection. if a car was coming i would have easily been struck. i let it sit for a few seconds and then the transmission finally got into, and stayed in, first gear. at first it went into gear and then slipped out of gear. this "wrench" light was apparently a limp home mode, another complaint, besides the stalling, would be the fact that this little yellow wrench light does nothing to warn me that the truck is actually in an impaired state, a "limp" mode. i work in the aerospace industry and this would never be tolerated, a function that hampers the normal performance of your vehicle should be easy to recognize as a warning, a little yellow wrench looks like a service light. (ID No. 11047221)

NHTSA Complaint dated May 13, 2019:  intermittent transmission hesitation under acceleration, while pulling into traffic from a side street. without warning the truck completely cuts out. the engine is still running but there is no forward acceleration from the truck. this lasts about 10 seconds. two incidents so far. also very heavy, abrupt shifting, jerking shifting. also intermittent when shifting the truck into reverse while stationary there is a loud heavy clunk from the transmission. (ID No. 11207153)

NHTSA Complaint dated April 17, 2019:  with 2018 f-150 10 speed transmission is shifting hard an down shifts hard getting whiplash. downstairs too hard been at the dealership today is the second time they constantly act like there's nothing wrong with the vehicle av to reset it once before still having major problems with that new transmission. so basically in inner-city driving is somebody was to jump in front of the vehicle with downshift quickly giving driver or any passengers whiplash stop the vehicle not a very safe or practical build can cause accidents and give major problems if anybody has bad backs or necks was not disclosed at time of sale of a hard shifting transmissions. (ID No. 11196876)

NHTSA Complaint dated April 11, 2019: my truck has 15,000 miles on it. the acceleration will run away frequently (press the pedal and there is a severe lag and lack of power). there will be random engine noise when decelerating around 45 miles per hour. also, acceleration will be rough when going from 20-30 miles per hour just before the it shifts into a higher gear. i took this to the ford dealer and they said there are no error codes on the trucks computer system. also, the steering will be stiff or unaligned at random times. please assist in getting these issues corrected. (ID No. 11195550)

NHTSA Complaint dated March 26, 2019:  tl* the contact owns a 2018 ford f-150. while driving various speeds, the vehicle hesitated to accelerate while depressing the accelerator pedal. also, a clunking noise was present when the transmission switched gears and the vehicle felt different. the vehicle was not diagnosed or repaired. nye ford (1555 upper lennix ave, onye, ny) and the

manufacturer were notified of the failure. the vin was not available. the failure mileage was 14,000. (ID No. 11191541)

NHTSA Complaint dated March 4, 2019:  since purchasing the truck, the 10 speed automatic transmission doesn't seem to shift smoothly in many gears. it seems to lurch when shifting at often times and will skip gears when sifting quite frequently. for a new vehicle it doesn't shift smoothly at all. it's been serviced at an authorized ford dealer where they told me the transmission was reprogrammed due to a technical service bulletin but even since then it still doesn't shift smoothly. it happens pretty much everyday or every time i drive it since it was purchased. (ID No. 11184182)

NHTSA Complaint dated February 20, 2019:  this vehicle generally exhibits harsh upshifts (3rd-to-4th) and downshifts (4th-to-3rd) as indicated on the driver's ip. (ID No. 11181413)

i have experienced multiple occasions when the vehicle will "miss" the shift from 3rd to 4th, normally when cold and under light to moderate throttle conditions. the gear indicator briefly shows 1st gear, however, i was able to apply full throttle (100% accel pedal), but had no power to the wheels (drive is not engaged). engine speed rose to approximately 3000 rpm. this condition lasted for about 2-3 secs before it shifted to 4th, the revs settled to normal/expected range and drive to the wheels was re-engaged. this is an extremely dangerous condition that leaves me without power to safely accelerate, or merge with traffic. (ID No. 11181413)

NHTSA Complaint dated February 20, 2019: tl* the contact owns a 2018 ford f-150. while driving various speeds, the transmission downshifted on its own. the vehicle was taken to joel confer ford (2935 penns valley pike, centre hall, bellfornte, pa) on several occasions for the same failure and the transmission control module was reprogrammed; however, the failures continued. the manufacturer was notified of the failures, but no assistance was offered. the vin was not available. the failure mileage was 10,000. *tt*jb (ID No. 11181310)

NHTSA Complaint dated February 13, 2019:  transmission downshifts hard, delays of power to rear wheels, clunking noise, shuddering. been to dealership,3 times for transmission. dealership said i need to drive the truck until transmission gets worse before they can fix it. dealership said im wasting their time with warranty work. ford will not take action to help. transmission problems make the truck unsafe to drive along with its severe steering problems. please someone please help me before myself or my kids or someone else gets injured due to this unsafe truck and negligent dealership and ford (ID No. 11179963)

NHTSA Complaint dated February 9, 2019:  10-speed transmission hesitates/randomly shifts constantly during driving. when stopping at traffic lights, after being completely stopped, the vehicle lurches and an audible clunk can be heard from the transmission. it has always been sluggish when accelerating, today that has gotten far worse and the transmission light is on. i had a 45 minute drive home and the truck struggled to get up to 40 mph. this erratic transmission behavior makes it dangerous to drive in any kind of traffic or on the highway because you can't predict how the vehicle will behave when pushing the gas pedal. (ID No. 11175904)

NHTSA Complaint dated January 18, 2019: the transmission can not decide which gear to be in creating pauses of power distribution to the rear wheels. the transmission shifts hard and pulls the

vehicle back and forth creating loud clunking noises and rattling the passengers. the poor operation of the transmission creates unsafe driving conditions. (ID No. 11170881)

NHTSA Complaint dated February 13, 2019: transmission downshifts hard, delays of power to rear wheels, clunking noise, shuddering. been to dealership,3 times for transmission. dealership said i need to drive the truck until transmission gets worse before they can fix it. dealership said im wasting their time with warranty work. ford will not take action to help. transmission problems make the truck unsafe to drive along with its severe steering problems. please someone please help me before myself or my kids or someone else gets injured due to this unsafe truck and negligent dealership and ford (ID No. 11179963)

NHTSA Complaint dated January 18, 2019: vehicle will sometimes hesitate during acceleration and transmission will slip - engine rpms will rise to about 2000 and then transmission will engage with a heavy clunk in the drive train. this issues has happened when engine is cold and at normal operating temp. the vehicle currently has 9000 miles on the odometer and has happened five(5) times already. took to local dealer and they are unable to doplicate (ID No. 11166063)

NHTSA Complaint dated December 13, 2018:  my truck occasionally does not accelerate from a stop at the correct speed. the rpms go way up but the truck barely moves. i described it to the dealer as being in 1/2 of 1st gear, but even then it does not feel totally connected between engine and transmission. it was much worse during hot weather. (ID No. 11161192)

NHTSA Complaint dated November 8, 2018:  while driving 60mph up a slight incline on the interstate, the truck stopped decelerating. the engine rpms jumped up. fortunately i was in the right hand lane and pulled to the shoulder and out of traffic. i was able to rev the rpms and no acceleration, while the gear indicator continued to read "d." it appeared the transmission slipped out of all gears. i coasted to a stop and apologized to my friend for the language as i was on a handsfree call. i placed the gear selector in park, noticed that there were no warning indicators on the dash, and shut off the truck. i pulled out the manual and tried to think of what to do next. finding no solutions, a friend suggested before i call a tow truck, to start it up and try to put it in drive. i did, and it went into gear normally. it has not happened again, however it has had a few unusually aggressive gear changes. i do not trust this truck with the coyote v-8 engine and 10-speed transmission combination. (ID No. 11161177)

NHTSA Complaint dated December 7, 2018: tl* the contact owns a 2018 ford f-150. the contact stated that the transmission shifted unevenly in the first three gears. when the vehicle was started initially, the rpms increased and decreased. the contact called koons sterling ford (46869 harry byrd hwy, sterling, va 20164, (703) 430-7700) and was informed that there was no recall for the failure. a diagnostic appointment was scheduled for a recall that was unrelated to the failure. the manufacturer was not contacted. the failure mileage was 13,000. (ID No. 11156801)

NHTSA Complaint dated December 7, 2018:  10 speed automatic transmission. transmission makes noise, shifts hard when cold, bucks and surges at lower speeds, downshifts are harsh. dealer states this is all normal behavior for this transmission. worst automatic i have ever owned. (ID No. 11156896)

NHTSA Complaint dated November 17, 2018:  10 speed transmission has been an ongoing issue, was hopeful it would resolve itself once the 5k mile break-in period was surpassed. transmission is awkward, clumsy and spends too much time hunting between gear shifts. my 2013 f150 with 105k miles on it drives noticeably smoother. ford dealer ok with no real explanation for customers. (ID No. 11152174)

NHTSA Complaint dated October 8, 2018:  transmission has intermittent slipping and very rough up and down shifting. it also has intermittent rough hot start (truck kicks forward as if it wants to take off during start up). the truck also has problems shifting while on "sport" mode in which it will not shift up to the next gear even as it reaches the red line in the tachometer. these problems have progressively increased since i bought the truck back in november 2017. i have brought up these concerns to two separate ford dealers and both stated i had to get used to the shifting in this new 10 speed transmission. both dealers also stated that they've had lots of costumer complaints regarding my concern but have not received any direction from ford. my concern is that the transmission might lock up, seize or have a catastrophic failure in which fluid would spill on the roadway and cause me to loose control of the truck. i have looked into several forums and found lots of people with similar complains regarding this 10 speed transmission. please help...thank you. (ID No. 11139060)

NHTSA Complaint dated September 6, 2018:  same issues I'm reading here. vehicle frequently makes a loud bang when started. shifts gears extremely rough to the point where you're jerked around. no power when trying to accelerate from a stop which is extremely dangerous when cars are behind you or trying to accelerate merging onto the freeway. my truck has been to dealer twice now. the first time it was because my fuel injector went out at 4,500 miles! it doesn't run much better now. when i took it in they just blew me off and said it was "normal behavior for the vehicle. reading all these issues here, ford really needs to take action! extremely dangerous!! (ID No. 11124723)

NHTSA Complaint dated August 23, 2018:  10-speed transmission: the transmission shifts very badly. jerky shifting and often times the truck is sluggish when starting from a stop, often times to the point of acting like the engine is about to die. the only way to partially correct this issues is to drive aggressively and take off from a start with more throttle than one would normally want to. occasionally you can hear/feel a knock from under the truck - underneath the driver's seat when you start the truck and place the transmission in drive. other times when you start the truck and quickly place the transmission in drive the engine will cut off all while your right foot is still on the brake pedal. on one occasion while i was driving through an intersection on a highway at a slow speed (3 - 5 mph?) behind a car which made a right hand turn, i started accelerating and a very loud bang noise occurred that sounded like two cars hitting one another and a hard shake was felt. i checked my mirrors because i thought someone had rear-ended me. just this terrible 10-speed transmission. all of what i have described is after taking the truck to 2 different ford dealerships. all they have done so far is to re-install software. i plan to take it back to a dealership for the third time hoping that maybe someone might test drive it and actually drop the transmission oil pan and actually look at the transmission. maybe if i am lucky the transmission will self-destruct. (ID No. 11121927)

NHTSA Complaint dated August 4, 2018: truck downshifts very erratically and harsh from 6th to 5th gear while braking, causing the brake pedal to be pushed down at various pressures due to the truck lunging forward because of the erratic and harsh downshift from 6th to 5th gear. truck does not feel safe, the downshift is so erratic and harsh that it feels as if you are being rear ended. i have allowed time for the transmission to "learn" as stated in the manual but it has not changed. (ID No. 11119910)

NHTSA Complaint dated April 20, 2018: 10 speed transmission hazards: when braking the transmission lunges into to lower gears and surges forward erratically requiring varying brake pressure to stop. acceleration is also erratic, sometimes delayed, sometimes immediate. the ford dealership does not have a solution and ford will not responds to calls. the erratic behavior of the transmission makes the vehicle dangereous. (ID No. 11089179)

NHTSA Complaint dated April 9, 2018: tl* the contact owns a 2018 ford f-150. while driving approximately 10 mph with the vehicle in first gear, the vehicle shifted into neutral. a few seconds later, the vehicle shifted into second gear. the contact stated that the failure recurred fifteen times. the vehicle was taken to the dealer (moberly motors ford in moberly, missouri, 660-263-6000) determined that the vehicle performed normally. the vehicle was not repaired. the manufacturer was notified of the failure. the approximate failure mileage was 521. (ID No. 11084065)

51.     Ford failed to disclose the Defect or to conduct sufficient testing or research that would have revealed the Defect. As a result, Ford has caused Ford F-150 drivers to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Transmission Defect in the Class Vehicles.

52.     As evidenced by the customer complaints, Ford was put on sufficient notice regarding harsh and abnormal shifting and loss of vehicle power.

53.     Ford has never disclosed the Transmission Defect to consumers. Instead, Ford attempted to squelch public recognition of the Transmission Defect by propagating the falsehood that the harsh and bumpy shifting in Class Vehicles was "normal."

54.     Ford has allowed Plaintiff and Class Members to continue to drive the Class Vehicles, despite knowing that they are prone to harsh or abrupt shifting, hesitation, and surging.

55.     Ford has not recalled the Class Vehicles to repair the Transmission Defect and has not offered to reimburse Class Vehicle owners and lessees who incurred costs relating to the transmission problems.

56.     Plaintiff and Class Members are reasonable consumers who reasonably expect their Class Vehicles will not harshly and abruptly shift and will not experience sudden and unexpected power surges and losses.

57.     Plaintiff and Class Members reasonably expected that Ford would not sell or lease Class Vehicles with known defects, such as the Transmission Defect, and that it would disclose any such defects to its customers before they purchased or leased Class Vehicles. Plaintiff and Class Members did not expect Ford to conceal the Transmission Defect, or to continually deny its existence.

58.     Consequently, Plaintiff and Class Members have not received the benefit for which they bargained when they purchased or leased the Class Vehicles.

59.     As a result of the Transmission Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.

**TOLLING OF THE STATUTE OF LIMITATIONS**

**A.     Discovery Rule Tolling**

60.     Plaintiff and Class Members could not have discovered through the exercise of reasonable diligence that their Class Vehicles were defective within the time-period of any applicable statutes of limitation.

61.     Among other things, neither Plaintiff nor the other Class Members knew or could have known that the Class Vehicles are equipped with transmissions with the Transmission

Defect, which causes those transmissions to harshly shift causing gear slippage, vehicle surging, and hesitation.

62.     Further, Plaintiff and Class Members had no knowledge of the Defect and it occurred in a part of the vehicle that was not visible to consumers. Ford attempted to squelch public recognition of the Transmission Defect by propagating the falsehood that the harsh shifting that drivers of the Cass Vehicles were experiencing was "normal." Accordingly, any applicable statute of limitation is tolled.

**B.      Fraudulent Concealment Tolling**

63.     Throughout the time period relevant to this action, Ford concealed from and failed to disclose to Plaintiff and the other Class Members vital information about the Transmission Defect described herein.

64.     Ford kept Plaintiff and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiff nor the other Class Members could have discovered the Defect, even upon reasonable exercise of diligence.

65.     Throughout the Class Period, Ford has been aware that the transmissions it designed, manufactured, and installed in the Class Vehicles contained the Transmission Defect, resulting in harsh shifting, gear slippage, and vehicle surging and hesitation.

66.     Despite its knowledge of the Defect, Ford failed to disclose and concealed, and continues to conceal, this critical information from Plaintiff and the other Class Members, even though, at any point in time, it could have disclosed the Transmission Defect through individual correspondence, media release, or by other means.

67.     Plaintiff and the other Class Members justifiably relied on Ford to disclose the Transmission Defect in the Class Vehicles that they purchased or leased, because the Defect was hidden and not discoverable through reasonable efforts by Plaintiff and the other Class Members.

68.     Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiff and the other Class Members have sustained as a result of the Defect, by virtue of the fraudulent concealment doctrine.

**C.     Estoppel**

69.     Ford was under a continuous duty to disclose to Plaintiff and the other Class Members the true character, quality, and nature of the defective Transmissions.

70.     Ford knowingly concealed the true nature, quality, and character of the defective Transmissions from consumers.

71.     Based on the foregoing, Ford is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

73.     The Class is defined as:

**All persons in Pennsylvania who formerly or currently own or lease one or more of 2017 to 2020 Model Year Ford F-150 trucks with a 10R80 10-speed automatic transmission.**

74.     Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased Class Vehicles for the purpose of resale.

75.     Plaintiff reserves the right to amend or modify the Class definition after they have had an opportunity to conduct discovery.

76.     Numerosity: Fed. R. Civ. P. 23(a)(1). The Class is so numerous that the joinder of all members is unfeasible and not practicable. While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believes that thousands of consumers have purchased or leased the Class Vehicles in Pennsylvania.

77.     Commonality: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

      a.    whether the Class Vehicles and their transmissions are defectively designed or manufactured such that they are not suitable for their intended use;

      b.    whether the fact that the Class Vehicles suffer from the Transmission Defect would be considered material to a reasonable consumer;

      c.    whether, as a result of Ford's concealment or failure to disclose material facts, Plaintiff and Class Members acted to their detriment by purchasing Class Vehicles manufactured by Ford;

      d.    whether Ford was aware of the Transmission Defect;

      e.    whether the Transmission Defect constitutes an unreasonable safety risk;

      f.    whether Ford breached express warranties with respect to the Class Vehicles;

g.   whether Ford has a duty to disclose the defective nature of the Class Vehicles and the Transmission Defect to Plaintiff and Class Members;

h.   whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

i.   Whether Ford violated the Magnuson-Moss Warranty Act when it sold to consumers Class Vehicles that suffered from the Transmission Defect.

78.   Adequate Representation: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

79.   Predominance and Superiority: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Ford's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Ford's misconduct. Absent a class action, Class Members will continue to incur damages, and Ford's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY
### (13 Pa. C.S.A. § 2313)
### (Plaintiff individually, and on behalf of the Class)

80.     Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

81.     Plaintiff brings this cause of action individually and on behalf of the Class.

82.     13 Pa. C.S.A. § 2313 states, that:

(a)     Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b)     Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

83.     In the course of selling and leasing the Class Vehicles, Ford expressly warranted in writing that the vehicles were covered by certain warranties in Ford's "New Vehicle Limited Warranty" as described herein.   This express warranty states that "authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in the factory-supplied materials or factory workmanship."[8]

84.     As evidenced by the TSB from September 7, 2018, the Transmission Defect is covered by New Vehicle Limited Warranty.

---

[8]  Source: http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-Car-Lt-Truck-version-5_frdwa_EN-US_01_2018_3.pdf (last viewed January 2, 2020).

85.    The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiff and Class Members bought or leased the Class Vehicles.

86.    Ford breached its express warranties to repair defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unwilling to reasonably repair, the Transmission Defect.

87.    Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and Class Members whole and because Ford has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

88.    Accordingly, recovery by Plaintiff and the Class is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

89.    Ford was provided notice of these issues by Plaintiff as described herein and by numerous customer complaints regarding the Transmission Defect before or within a reasonable amount of time after the allegations of the Defect became public.

90.    As a direct and proximate result of Ford's breach of express warranties, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY
### (13 Pa. C.S.A. §§ 2314, *et seq.*)
### (Plaintiff individually, and on behalf of the Class)

91.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

92.    Plaintiff brings this cause of action individually and on behalf of the Class.

93.     Ford is and was at all relevant times a merchant with respect to the Class Vehicles, under 13 Pa. C.S.A. § 2103(a).

94.     The Class Vehicles are and were at all relevant times "good" within the meaning of 13 Pa. C.S.A. § 2105(a).

95.     A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to 13 Pa. C.S.A. § 2314.

96.     In addition, a warranty that the Class Vehicles were fit for their particular purpose is implied by law pursuant to 13 Pa. C.S.A. § 2315. Defendant knew at the time of sale or lease of the Class Vehicles that Plaintiff and the other Class Members intended to use the vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiff and the other Class Members were relying on Defendant's skill and judgment to furnish suitable products for this particular purpose.

97.     The Transmissions installed in the Class Vehicles were defective at the time they left the possession of Ford, as set forth above.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect in the Defective Transmission and present an undisclosed safety risk to drivers, occupants, and others. Thus, Ford breached its implied duty of merchantability.

98.     Defendant cannot disclaim its implied warranties as it knowingly sold or leased a defective product.

99.     Ford knew, or should have known, that the Class Vehicles posed a safety risk and were defective and knew, or should have known, of these breaches of implied warranties prior to sale or lease of the Class Vehicles to Plaintiff and Class Members.

100.   Ford was and is in actual or constructive privity with Plaintiff and Class Members.

    a.   Plaintiff had and continues to have sufficient direct dealings with Ford and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract. Ford's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, *i.e.*, Plaintiff and Class Members.

    b.   Privity is not required to assert this claim because Plaintiff and the Class Members are intended third-party beneficiaries of contracts between Ford and its dealers, franchisees, representatives, and agents.

    c.   By extending express written warranties to end-user purchasers and lessees, Ford brought itself into privity with Plaintiff and all Class Members.

101.   Ford has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

102.   Plaintiff and Class Members used the Transmissions installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Ford or by operation of law in light of Ford's unconscionable conduct.

103.   Ford had actual knowledge of, and received timely notice of the Defect at issue

in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

104.    In addition, Ford received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the Transmissions installed in the Class Vehicles.

105.    As a direct and proximate result of Ford's breach of its implied warranties, Plaintiff and class members bought the Class Vehicles without knowledge of the Defect or their serious safety risks and purchased unsafe products which could not be used for their intended use.

106.    As a direct and proximate result of Ford's breach of its implied warranties, Plaintiff and Class Members have suffered damages and Ford was unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of repair, replacement or a recall.

## THIRD CAUSE OF ACTION

### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)
### (Plaintiff individually, and on behalf of the Class)

107.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

108.    Plaintiff brings this cause of action individually and on behalf of the Class.

109.    Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(6).

110.    Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(6).

111.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(6).

112.    Ford's express warranties are each a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

113.    This Court has original jurisdiction over this matter under CAFA, and therefore can assert supplemental jurisdiction over Plaintiff's Magnuson-Moss Warranty Act claim.

114.    As discussed herein, Ford extended a three-year/36,000 mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee. Ford further extended a five-year/60,000 mile Powertrain Warranty with the purchase or lease of the Class Vehicles.

115.    Ford breached each of these express warranties by:

      a.    Selling and leasing Class Vehicles with transmissions that were defective in material and workmanship, requiring repair or replacement within the warranty period; and

      b.    Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, any defective component parts.

116.    Ford's breach of express warranty has deprived Plaintiff and Class Members of the benefit of their bargain.

117.    The matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interest and costs, and there are over 100 Class Members.

118.    Ford has been afforded a reasonable opportunity to cure its breach of written warranties, including when Ford consumers brought their vehicles in for diagnosis and repair of the Transmission Defect.

119.    As a direct and proximate cause of Ford's breach of written warranties, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial. Ford's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution of value, costs, including statutory attorneys' fees and/or other relief as appropriate.

### FOURTH CAUSE OF ACTION

**THE PENNSYLVANIA UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION LAW ("UTPCPL")
(73 Pa. C.S.A. § 201-1, *et seq.*)
(Plaintiff individually, and on behalf of the Class)**

120.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

121.    Plaintiff brings this cause of action individually and on behalf of the Class.

122.    Plaintiff and other Class Members are persons within the context of the UTPCPL, 73 P.S. § 201-2(2).

123.    Defendant Ford is a person within the context of the UTPCPL, 73 P.S. § 201-2(2).

124.    At all times relevant hereto, Ford was engaged in trade or commerce as defined under the UTPCPL, 73 P.S. § 201-2(3).

125.    Plaintiff and the proposed Class are "consumers" who purchased and/or leased the Class Vehicles for personal, family or household use within the meaning of the UTPCPL, 73 P.S. §§ 201-2(2) and 201.9-2.

126.    The UTPCPL prohibits engaging in any "unfair or deceptive acts or practices in the conduct of any trade or commerce...." 73 P.S. § 201-3.

127.    Defendant's conduct, as described herein, took place within the Commonwealth of Pennsylvania and constitute unfair or deceptive acts or practices in the course of trade and commerce, in violation of §§ 201-2(4)(v), (vii), (ix), (xiv) and (xxi) of the UTCPL.

128.    Ford engaged in deceptive trade practices in violation of the UTPCPL by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective transmissions installed in them.

129.    Defendant violated UTPCPL §§ 201-2(4)(v) and (vii) by representing that its Class Vehicles and transmissions have characteristics or benefits that they do not have and that the Class Vehicles "are of a particular standard, quality or grade" when they are of another.

130.    Defendant advertised the Class Vehicles with intent not to sell them as advertised, in violation of UTPCPL § 201-2(4)(ix).

131.    Defendant engaged in fraudulent and/or deceptive conduct which creates a likelihood of confusion or of misunderstanding in violation of UTPCPL § 201-2(4)(xxi).

132.    Ford has known of the defective transmissions since at least March 2018, when it issued the first TSB regarding the Defect, thereby acknowledging numerous consumer complaints made to the NHTSA.   However, Ford continued to allow unsuspecting new and used car purchasers to buy or lease the Class Vehicles and allowed them to continue driving dangerous vehicles.

133.    Ford owed Plaintiff and Class Members a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective transmissions installed in them because Ford: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff; and/or (c) made incomplete representations

about the safety and reliability of the foregoing generally, while withholding material facts from Plaintiff and Class Members that contradicted these representations.

134.    Defendant intended that Plaintiff and other Class Members would, in the course of their decision to expend monies in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the quality of the Class Vehicles and its transmissions with respect to materials, workmanship, design and/or manufacture.

135.    Ford's failure to disclose and active concealment of the dangers and risks posed by the defective transmissions in Class Vehicles were material to Plaintiff and Class Members and any reasonable consumer would have considered those facts important in deciding whether to purchase or lease a Class Vehicle. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

136.    Ford's misrepresentations, concealment, omissions and other deceptive  conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff and other Class Members to be deceived about the safety and reliability of the Class Vehicles and its transmissions, and that such Class Vehicles would be backed by both express and implied warranties that would in fact be honored by Defendant.

137.    Further, Section 201-(4)(xiv) of the UTPCPL provides that it shall be unlawful in the sale of goods to fail to comply with the terms of any written warranty given to the buyer at, or after a contract for the purchase of goods or services is made.

138.    Although Ford and its agents were aware that the Class Vehicles were equipped with a defective 10R80 transmission at the time that Plaintiff and Class Members purchased or

leased their Class Vehicles, Ford refused to provide a fix for its defective transmission, free of charge, as to comply with the terms of its written warranty and prevent the damages described herein.

139.    Plaintiff and Class Members reasonably relied on Ford's misrepresentations and omissions and expected that the Class Vehicles would not be equipped with a defective transmission, such that it would render the Class Vehicles unsafe and not fit for their ordinary use. Further, Plaintiff and Class Members reasonably expected Ford would honor its warranty obligations as represented to them at the time they purchased or leased their Class Vehicle.

140.    The conduct of Defendant offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused avoidable and substantial injury to Class Vehicle owners and lessees (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

141.    Plaintiff and Class Members have been damaged as a proximate result of Defendant's violations of the UTPCPL and have suffered damages as a direct and proximate result of purchasing defective Class Vehicles.

142.    As a direct and proximate result of Defendant's violations of the UTPCPL, as set forth above, Plaintiff and the Class Members have suffered ascertainable loss of monies and property, caused by Ford's misrepresentations and failure to disclose material information and refusal to provide effective cost-free repairs pursuant to its warranty. Had they been aware of the defective transmissions installed in the Class Vehicles, Plaintiff and Class Members either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff and Class Members did not receive the benefit of their bargain as a result of Ford's misconduct.

143.    Plaintiffs are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorney's fees, under sections 201-9.2(a) and 201-4.1 of the UTPCPL. Plaintiff and Class Members are also entitled to injunctive relief, seeking an order enjoining Ford's unfair and/or deceptive acts or practices under section 201-9.2(b) of the UTPCPL.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE
**(Plaintiff individually, and on behalf of the Class)**

144.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

145.    Plaintiff brings this cause of action individually and on behalf of the Class.

146.    Ford had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the use to which its products were put by Plaintiff and the Class Members. Ford breached its duties to Plaintiff and the Class Members because they were negligent in the design, development, manufacture, and testing of the Transmissions installed in the Class Vehicles, and Ford is responsible for this negligence.

147.    Ford was negligent in the design, development, manufacture, and testing of the Transmissions installed in the Class Vehicles because they knew, or in the exercise of reasonable care should have known, that the vehicles equipped with defective transmissions pose an unreasonable risk of serious bodily injury to Plaintiff and Class Members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to shifting harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears, which can, among other things, distract drivers and cause them to lose control over their vehicles.

148.   Ford owed Plaintiff and the Class a duty to provide thorough notice of known safety defects, such as the Transmissions' shifting difficulties.

149.   Once it discovered the Transmission Defect, Ford also owed Plaintiff and the Class Members a duty to ensure that an appropriate repair procedure was developed and made available to consumers.

150.   Ford also owed Plaintiff and the proposed Class a duty not to engage in fraudulent or deceptive conduct, including the knowing concealment of material information such as the transmission's shifting problems. This duty is independent of any contractual duties Ford may owe or have owed.

151.   Under the TREAD Act, Ford owed an independent duty to send notice to Plaintiff and Class Vehicle owners, purchasers, and dealers whenever it "learns the vehicle or equipment contains a defect and decides in good faith that the Defect is related to motor vehicle safety." 49 U.S.C. § 30118(c). Despite Ford's awareness of the Transmission Defect, it failed to timely notify owners, purchasers, and dealers. This duty is independent of any contractual duties Ford may owe or have owed to them.

152.   A finding that Ford owed a duty to Plaintiff and the Class would not significantly burden Ford. Ford has the means to efficiently notify drivers of Class Vehicles about dangerous defects. The cost borne by Ford for these efforts is insignificant in light of the dangers posed to Plaintiff and the Class by Ford's failure to disclose the Transmission Defect and provide an appropriate notice and repair.

153.   Ford's failure to disclose the Defect in Class Vehicles to consumers and the NHTSA is a departure from the reasonable standard of care. Accordingly, Ford breached its duties to Plaintiff and the Class.

154.    Ford's conduct was contrary to public policy favoring the disclosure of defects that may affect customer safety; these policies are embodied in the TREAD Act, and the notification requirements in 49 C.F.R. § 573.1, *et seq.*

155.    As a direct, reasonably foreseeable, and proximate result of Ford's failure to exercise reasonable care to inform Plaintiff and the Class about the Defect or to provide appropriate repair procedures for it, Plaintiff and the Class Members have suffered damages in that they spent more money than they otherwise would have on Class Vehicles, which are of diminished value.

156.    Plaintiff and the Class Members could not have prevented the damages caused by Ford's negligence through the exercise of reasonable diligence. Neither Plaintiff nor the Class Members contributed in any way to Ford's failure to provide appropriate notice and repair procedures.

157.    Plaintiff and the Class seek to recover the damages caused by Ford. Because Ford acted fraudulently and with willful, wanton and reckless misconduct, Plaintiff also seeks an award of punitive damages.

## SIXTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### (Plaintiff individually, and on behalf of the Class)

158.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs as if fully set forth herein.

159.    Plaintiff brings this cause of action individually and on behalf of the Class.

160.    Ford has long known that its 10R80, 10-speed automatic transmissions have a propensity to shift harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between

gears, posing a serious safety risk, which it concealed and failed to disclose to Plaintiff and the proposed Class Members.

161.    As a result of its fraudulent acts and omissions related to the defective Transmissions, Ford obtained monies which rightfully belong to Plaintiff and the Class Members to the detriment of Plaintiff and the proposed Class Members.

162.    Ford appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class Members who, without knowledge of the Defect, paid a higher price for their vehicles which actually had lower values.  Ford also received monies for vehicles and transmissions that Plaintiff and the proposed Class Members would not have otherwise purchased or leased.

163.    It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

164.    Ford's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

165.    Plaintiff and the Class are entitled to restitution of the profits unjustly obtained plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

B.      Ordering Defendant to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiff and the other members of the Class;

C.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Class;

D.      Ordering Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiff and the other members of the Class;

E.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective recall campaign;

F.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

G.      Ordering Defendant to pay both pre- and post-judgement interest on any amounts awarded; and

H.      Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury as to all matters so triable.

*Signature on following page*

Dated:  January 13, 2020

Respectfully submitted,

**GREG COLEMAN LAW PC**

Gregory F. Coleman*
Arthur M. Stock (PA Bar #64336)
Lisa A. White*
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 522-0049
greg@gregcolemanlaw.com
arthur@gregcolemanlaw.com
lisa@gregcolemanlaw.com

John R. Fabry*
**THE CARLSON LAW FIRM, P.C.**
1717 N. Interstate Highway 35
Suite 305
Round Rock, Texas 78664
Telephone: (512) 671-7277
Facsimile:  (512) 238-0275
JFabry@carlsonattorneys.com

Sidney F. Robert*
**BRENT COON AND ASSOCIATES**
300 Fannin, Suite 200
Houston, Texas 77002
Telephone:  713-225-1682
Facsimile:  713-225-1785
sidney.robert@bcoonlaw.com

**Attorneys for Plaintiff**

*Application *pro hac vice* to be submitted

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| VICTOR M. ORNDORFF, on behalf of himself and all others similarly situated, | FORD MOTOR COMPANY |

**(b)** County of Residence of First Listed Plaintiff  York County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Arthur M. Stock, Esq., Gregory F. Coleman, Esq., Lisa A. White, Esq.
GREG COLEMAN LAW PC, 800 S. Gay Street, Suite 1100
Knoxville, TN  37929  (865) 247-0080

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☒ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☒ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332(d)
Brief description of cause:
Vehicle transmission defect

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE  Robert M. Dow, Jr.

DOCKET NUMBER  1:19-cv-05045; USDC, NDIL

DATE  01/13/2020

SIGNATURE OF ATTORNEY OF RECORD  *Arthur Stock*

JAN 14 2020

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| *Victor Orndorff* | : | CIVIL ACTION |
| v. | : | |
| *Ford Motor Co.* | : | NO. *20 CV 247* |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)          (✓)

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

| | | |
|---|---|---|
| *1/13/20* | *Andrew Stock* *Arthur Stock* | *plaintiff* |
| **Date** | **Attorney-at-law** | **Attorney for** |
| *267 773 4-904* | *215 875 4604* | *arthur@gregcolemanlaw.com* |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**JAN 14 2020**